UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| J&J SPORTS PRODUCTIONS, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-1161-B |
| | § | |
| JESUS GILES, SR., et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff J&J Sports Productions' (J&J) Motion for Default Judgment. Doc. 13. For the reasons that follow, the Court **GRANTS** Plaintiff's motion.

### I.

### BACKGROUND

On May 2, 2017, J&J filed suit alleging that Jesus Giles, Sr., Fabiola Valderrama, and Taqueria Mexicana Delicious (collectively, "Defendants") violated the Federal Communications Act of 1934 (FCA) by broadcasting the May 2014 Floyd Mayweather, Jr. v. Marcos Rene Maidana WBC Welterweight Championship Fight Program (the Event) without obtaining a sub-license from J&J, which held exclusive rights to sub-license the telecast of the Event. Doc. 1, Compl., ¶¶ 7, 13. J&J executed summons on Defendants on August 10, 2017. Doc. 9; Doc. 10. But Defendants never answered or otherwise responded to J&J's complaint. On November 1, 2017, J&J requested that the Clerk issue an entry of default, Doc. 12, and filed a motion for default judgment, Doc. 13. The Clerk entered default on November 2. Doc. 14. Therefore, J&J's motion is ripe for review.

## II.

## LEGAL STANDARD

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). First, courts consider whether the entry of default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include:

> [1] whether material issues of fact are at issue; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.*

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover"). In doing so, courts are to assume that due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* However, a "defendant is not held to admit facts that are not-well pleaded or to admit conclusions of law." *Id.*

Third, courts determine "what form of relief, if any, the [plaintiff] should receive." *1998 Freightliner*, 548 F. Supp. 2d at 384. Normally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). But if the amount of damages can be determined with

mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.

## ANALYSIS

A.  *Whether An Entry of Default Judgment is Procedurally Warranted*

After applying the six *Lindsey* factors to J&J's motion, the Court determines that default judgment is procedurally warranted. First, Defendants have not filed any responsive pleadings so there exists no material issues of fact. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). Second, Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests."*Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex, Oct. 5, 2011). Third, given that Defendants have had sufficient time to either file an answer to J&J's complaint, or else explain why they have not done so, the grounds for default are clearly established. *Cf. Elite v. KNR Grp.*, No. 99-41263, 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining his failure to appear was due to financial privation). Fourth, there is no evidence before the Court to suggest Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, J&J seeks only the relief the law provides it, which "mitigat[es] the harshness of a default judgment." *John Perez Graphics & Design, LLC v. GreenTree Inv. Grp., Inc.*, No. 12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if it were challenged by Defendants. *Lindsey*, 161 F.3d at 893.

B.   *Whether There Is a Sufficient Basis for Judgment in the Pleadings*

In light of the entry of default, Defendants are deemed to have admitted the allegations set forth in J&J's complaint. Nonetheless, the Court must review the pleadings to determine whether they present a sufficient basis for J&J's claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206. In conducting this analysis, the Fifth Circuit has looked to Rule 8 case law for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (footnote and citations omitted). "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

J&J alleges that Defendants "willfully intercepted or received the interstate communication of the Event," or, alternatively, "assisted in the receipt of the interstate communication of the Event." Doc. 1, Compl. ¶ 13. Then, according to J&J, Defendants "transmitted, divulged and published [the Event] . . . to patrons within the Establishment . . . willfully and with the express purpose and intent to secure commercial advantage and private financial gain." *Id.* ¶¶ 13–14. This not only "infringed upon Plaintiff's exclusive rights" to broadcast the Event, *id.* ¶ 14, but also violated 47 U.S.C. §§ 553 and 605, *id.* ¶ 18.

A person violates 47 U.S.C. § 605 when he "intercept[s] any radio communication . . . [or] receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such communication . . . for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C.

§ 605(a). A person violates 47 U.S.C. § 553 when he "intercept[s] or receive[s] or assist[s] in intercepting or receiving any communications service offered over a cable system" without authorization. *Id.* § 553(a)(1). And when a person intercepts satellite or cable transmissions without authorization, several courts have held that it violates both sections. *Entm't by J & J, Inc. v. Al-Waha Enters.*, 219 F. Supp. 2d 769, 774 (S.D. Tex. 2002) (collecting cases).

Here, J&J alleges the Event was transmitted via an "electronically coded or 'scrambled'" satellite signal and that Defendants intercepted it without authorization and exhibited the Event for commercial benefit. Doc. 1, Compl., ¶¶ 10–14. The Court concludes that J&J's allegations state a viable claim for relief and are sufficient to provide Defendants with "fair notice" of its claim that Defendants violated §§ 553 and 605 of the FCA.

C. *Damages*

J&J seeks statutory damages for violation of § 605 of the FCA in the amount of $10,000, additional damages of $50,000 under the FCA because Defendants' alleged violation was willful, attorney's fees, and post-judgment interest. Doc. 13, Mot. for Default J., 5, 7, 9–10.

1. Statutory Damages

Statutory damages for violations of § 605 of the FCA call for an award between $1,000 and $10,000 per violation, as the Court finds just. 47 U.S.C. § 605(e)(3)(C)(i)(II). If a Court finds a defendant violated the statute "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may increase the damage award by up to $100,000, at its discretion. *Id.* § 605(e)(3)(C)(ii).

Courts determine the reasonable amount of statutory damages by adding what the establishment would have paid in sub-licensing fees and an amount that the Court, in its discretion,

deems reasonable to deter future violation. *See Joe Hand Promotions, Inc. v. Alima*, No. 13-cv-0889-B, 2014 WL 1632158, at *4 (N.D. Tex. Apr. 22, 2014) (awarding $5000 based on sub-licensing fees of $1100–1200 and the need to deter future violations); *J & J Sports Prods., Inc. v. Beck*, No. L-13-57, 2013 WL 5592333, at *2 (S.D. Tex. Oct. 9, 2013) (same); *Al-Waha Enters.*, 219 F. Supp. 2d at 776 (awarding $5000 based on sub-licensing fees of $1500 and the need to deter future violations).

The amount an establishment pays in sub-licensing fees for any event is based on the capacity of the establishment. Defendants' estimated capacity is thirty people. Doc. 13-1, Pl.'s Ex. A-2, Sorenson Aff. Based on a capacity of fewer than one hundred patrons, Defendants would have paid $2200 in sub-licensing fees for this Event. *See* Doc 13-1, Ex. A-3, Rate Card. Based on the amounts awarded by previous courts, this Court finds that an additional $3800 is appropriate to deter future violations. Thus, Defendants owes $6000 in base statutory damages.

2.  Additional Damages

J&J requests an additional $50,000 in damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), based on its allegation that "Defendants' actions were willful and for purposes of direct or indirect commercial advantage or private financial gain." Doc. 13, Mot. for Default J., 7 (internal quotations omitted). J&J presents no evidence demonstrating Defendants willfully violated the FCA, but insists they could not have "innocently" accessed the Event broadcast given how complex it is to intercept a transmission. *Id.* Courts have generally found this reasoning persuasive, as there are limited means by which defendants can access closed-circuit, pay-per-view events and because it would be unlikely for an establishment to intercept such broadcasts by chance. *See Al-Waha Enters.*, 219 F. Supp. 2d at 776–77 (finding willfulness given the "limited methods of intercepting closed-circuit broadcasting of pay-per-view events" and "the low probability that a commercial establishment could intercept

such a broadcast merely by chance"); *J & J Sports Prods., Inc. v. Q Café, Inc.*, No. 10-CV-2006-L, 2012 WL 215282, at *5 (N.D. Tex. Jan. 25, 2012) (citing *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not de-scramble spontaneously, nor do television sets connect themselves to cable distribution systems.")). Based on this line of cases, the Court likewise concludes that J&J's evidence and allegations are sufficient to support a finding of willfulness.

Further, the record indicates that Defendants exhibited the Event for either direct or indirect commercial gain, as there were patrons in the establishment on the evening in question. *See* Doc. 13-1, Ex. A-2, Sorenson Aff (recording an average of 32 people in attendance). Additionally, Defendants displayed the Event on two televisions, one of which was a big-screen television, and served food and beverages. *Id.* These facts have been enough for other courts to find a commercial motive. *See Joe Hand Promotions, Inc. v. 152 Bronx*, 11 F. Supp. 3d 747, 756 (S.D. Tex. 2014) (finding the number of televisions broadcasting the event relevant to determining commercial motive); *Joe Hand Promotions Inc. v. Chios, Inc.,* Civil Action No. 4:11-cv-2411, 2012 WL 3069935, at *6 (W.D. Tex. July 27, 2012) (finding the sale of food and beverage indicative of commercial gain). Thus, the Court determines there is sufficient evidence to establish Defendants had a commercial motive for broadcasting the Event.

Because the Court determines that Defendants broadcast the Event willfully and for commercial gain, it must now decide by how much to increase the base amount of statutory damages. 47 U.S.C. § 605(e)(3)(C)(ii). Courts have awarded three to eight times the base statutory damages as additional damages. *Q Café, Inc.*, 2012 WL 215282 at *5. To determine by how much to multiply

the base statutory damages, courts consider a multitude of factors, including: (1) whether the establishment charged a cover to view the event, (2) the number of televisions on which the establishment showed the event, (3) whether the establishment advertised the event, (4) how many people were in attendance, (5) whether the establishment was a repeat offender, and (6) whether the establishment was in an urban area. *See, e.g., Alima*, 2014 WL 1632158, at *5 (awarding four times the statutory base award as additional damages where defendant charged a cover and showed the event on nine screens to approximately 85 to 125 patrons); *Beck*, 2013 WL 5592333, at *3 (awarding three times the base because defendant did not charge a cover, only thirty patrons viewed the event, and defendant was not a repeat offender); *Q Café Inc.*, 2012 WL 215282 at *5 (awarding five times the base statutory amount in part because the establishment was in an urban area); *J&J Sports Productions, Inc. v. Garcia,* Civil Action No. H-08-1675, 2009 WL 2567891, at *4 (S.D. Tex. Aug. 14, 2009) (awarding four times the statutory damages because the defendant openly advertised the event outside the establishment).

Here, Defendants did not charge a cover, and displayed the event on only two screens to approximately thirty people. Doc. 13-1, Ex. A-2, Sorenson Aff. There is no evidence that Defendants advertised the event or that they are a repeat offender. Nor is it clear that they are located in an urban area. Therefore, the Court finds that an additional-damages award of three times the base amount is reasonable. Thus, the Court awards $18,000 in total statutory damages.

### 3. Attorney's Fees

Under the FCA, the Court is required to order the recovery of full costs, including attorney's fees, to an aggrieved party who prevails. 47 § U.S.C. 605(e)(3)(B)(iii). J&J seeks one-third of its recovery or alternatively, the actual time J&J's attorney, David Diaz, spent litigating the case. Doc.

13, Mot. for Default J., 10. It also seeks attorney's fees for post trial and appellate services. *Id*. Mr. Diaz estimates he spent four hours working on this case at a rate of $250 per hour, totaling $1000. Doc. 13-1, Ex. B, Diaz Aff. Given this estimate, as well as the evidence and circumstances of the case, the Court finds J&J's request for $1000 in attorney's fees to be more reasonable than a one-third contingent fee.

The Fifth Circuit has described the procedure and standard for determining attorney's fees as follows:

> The determination of a fees award is a two-step process. First, the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

*Smith v. Acevedo*, 478 F.Appx 116, 124 (5th Cir. 2012) (quoting *Jiminez v. Wood Cty.*, 621 F.3d 372, 379–80 (5th Cir. 2010)). The *Johnson* factors are (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

Although J&J has not offered invoices or other evidence proving Mr. Diaz worked the number of hours he claims he did, the Court finds Mr. Diaz's estimated hours spent and hourly rate charged reasonable given his experience with anti-piracy cases and the authority he attaches to his

affidavit. Doc 13-1, Ex. B, Diaz Aff.; Doc 13-1, Ex. B-1, David M. Diaz Resume; Doc 13-1, Ex. B-2, Texas Lawyer 2014 Salary and Billing Report. Accordingly, the Court sees no reasons to adjust these figures and finds that J&J's request for $1000 in attorney's fees is appropriate.[1]

### 4. Post-Judgment Interest

Post-judgment interest is governed by 28 U.S.C. § 1961(a), which sets the rate at the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of the judgment. The rate for the week ending May 4, 2018 is 2.24%. *See* http://www.txnd.uscourts.gov/post-judgment-rates. Therefore, the Court awards post-judgment interest on J&J's statutory damages from this date forward at a rate of 2.24%.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** final default judgment in favor of J&J. It is therefore **ORDERED**, **ADJUDGED**, and **DECREED** that J&J is entitled to the following relief:

1. $18,000 in total statutory damages;

2. Attorney's fees totaling $1000;

3. Post-judgment interest at a rate of 2.24%; and

4. Costs of court.[2]

---

[1] Mr. Diaz lists six fees for post-judgment and appellate work that he presumably wishes the Court to award on a contingent basis. *See* Doc. 13-1, Ex. B, Diaz Aff. But Mr. Diaz has presented only scant evidence that the fees listed are reasonable for that work and no evidence that post-judgment or appellate work is likely in this case. Thus, the Court awards Mr. Diaz attorney's fees only for work actually performed. *See J&J Sports Prods., Inc. v. Old Town Ranchers, Inc.*, Civil Action No. 3:16-cv-2104-B, 2017 WL 2404988 at 6 n.2 (N.D. Tex. June 2, 2017) (denying Mr. Diaz's request for contingent fees and granting fees for work actually performed).

[2] *See* Fed. R. Civ. P. 54(d)(1).

SO ORDERED.

SIGNED: May 11, 2018.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE